## J. W. HOPKINS *v.* JAMES M. SANDIDGE.

1. STATUTES: CONSTRUCTION OF: ACT OF 1850 PRESCRIBING FORFEITURE OF LAND FOR NON-PAYMENT OF TAXES, STRICTLY CONSTRUED.—The Act of 1850, which prescribes a forfeiture of land for the non-payment of the taxes due thereon, is in derogation of the principles of the common law, and operates harshly and frequently with injustice to private rights, and confers extraordinary powers on the revenue officers, and should therefore receive a strict interpretation, and its operation be confined within the narrowest limits of the language employed. See 24 Maine R. 283; 1 Scammon, 335; 1 Douglas, (Mich.) 121; 3 Denio, 595; 1 Gilm. 131; Dwarris on Stat. 750.

2. TAXES: FORFEITURE OF LAND UNDER ACT OF 1850, WHEN VOID.—By the Act of 1850, in relation to the forfeiture of land for the non-payment of taxes, it is provided that the tax-collector shall return a list of the delinquent lands, verified by his oath, to the Board of Police, on the first Monday of April in each year; that the Board of Police shall, on the second Monday in April, examine the same, and order a certified copy to be sent to the auditor of public accounts to be recorded in his office; and that the list and verification so returned and recorded in the auditor's office, shall vest a title to the lands in the State, which shall only be impeachable by proof that the tax, for the non-payment of which the lands were forfeited, was actually paid. Held, that the return of the list on the first Monday in April, was an essential pre-requisite to a valid forfeiture; and that the owner might show a failure in this respect to defeat the title of the State or her vendee.

IN error from the Circuit Court of De Soto county. Hon. P. T. Scruggs, judge.

This is an action of ejectment, brought by plaintiff in error to the Spring Term, 1854, of the Circuit Court of De Soto county, for a tract of land in said county.

On the trial, it was agreed that the land in controversy was the property of N. R. Sledge when it was assessed for the taxes of 1850, and that it was assessed as his property; and the deraignment of Sledge's title was waived.

Plaintiff then offered in evidence the certificate of the auditor, in due form, that the land was returned forfeited to the State, for the non-payment of taxes, in April, 1851, and purchased from the State on the 26th of November, 1853, by A. D. Berry. He then read a deed in due form from the State to said Berry, dated November 26th, 1853; and another deed, dated December 24th, 1853, from said Berry to plaintiff. He also proved that defendant was in possession of the land at the date of the commencement of the suit.

Defendant then introduced the list of lands delinquent for the taxes of the year 1850, returned by the tax collector to the Board of Police, embracing the land in controversy, duly certified and attested, as required by law, and proposed to prove that it was the only list returned by the collector for that year, and that it was returned on the day of its date, (April 14th, 1851,) being the second Monday of April, 1851, and not the first Monday. He also proposed to prove by the same witness, that the tax assessor of De Soto county did not place the land in controversy on his assessment roll in a column for that purpose, after the same had been forfeited, as required by the Act, approved March 9th, 1850. Plaintiff objected to the admission of this testimony, but the objection was overruled, and the plaintiff excepted.

Defendant then further proved, that on the first day of January, 1851, he was in quiet and peaceable possession of the land, and had ever since held it; claiming title under a purchase from said N. R. Sledge.

The defendant had verdict and judgment, and the plaintiff prosecutes this writ of error.

*H. W. Walter*, for plaintiff in error.

The 4th section of the Act of 1850, giving certain force and effect to the certificate of the auditor of public accounts, in reference to lands forfeited to the State for non-payment of taxes, is a law of evidence, not of property.    See Session Acts of 1850, p. 52.

It is not unconstitutional for the legislature to declare what shall be competent testimony, or who shall be competent witnesses.    It has never been doubted, that the Statute of Frauds, in prescribing that written testimony only shall be admitted in certain cases, is constitutional.    Nor has it been questioned, that the law is constitutional, which declares that the *written* permit of the master or overseer of a slave shall be the only evidence of the consent of such master, &c., in cases of indictment for trading with a slave without the consent of the master, &c.    These are instances which support the constitutionality of the law which defines the competency of evidence.    It has further been held, that a law is not unconstitutional which declares certain persons incompetent, because of atheism, &c.

In fact, the section of the law in question is purely one of evidence, and no decision can be found which will deny to the legislature the power to declare what shall or shall not be legal testimony.

The first error of which we complain is, the admission of evidence to invalidate the deed from the auditor of public accounts to Berry, by showing that the sheriff had not made proper lists of forfeited lands, &c., and at the proper time.    The 4th section of the Act of 1850 provides, that a list and verification of the forfeited lands provided for in the preceding sections, should be filed with the auditor of public accounts, and should vest a title in the State to the lands, IMPEACHABLE *only* on proof of payment of the taxes.    Yet the court below said that the title of the State was impeachable, not only on proof of payment, but on proof that the sheriff had not furnished a list on the first, instead of second Monday of April. To state the law and the action of the court, shows that one is inconsistent with the other; either the law was wrong, or the court was.

The section further provides, " that in *all controversies* which

may arise touching the *delinquency* and *forfeiture* of such lands, the certificate of the auditor shall be filed and taken as evidence of the same, liable to be impeached *only* by proof of such payment to the collector." There was a *controversy* in the court below, touching the *delinquency* and *forfeiture* of land; the auditor's certificate was introduced, and yet the court permitted said certificate to be impeached, *not "by proof of payment* to the collector," but by other proof. We cannot conceive how the legislature could have more clearly expressed a rule, or a court more clearly have violated it. It is useless to cite authorities to prove an axiom; the question is, not as to the condition of things behind the certificate, but the power of the court to examine that state of things, except, " only by proof of payment to the collector." The legislature says it shall not be done, the court below says it shall, and this court must decide between them.

But it is said, that defendant in error was in peaceable adverse possession of the land under color of title, when the land was forfeited,—when the State sold to Berry, and Berry to plaintiff in error. We admit the general rule of law on the subject of conveyances of property held adversely to vendor and vendee, but we insist that there are exceptions to this general rule, and that the case at bar is one of those exceptions. There is a principle sanctioned by the highest judicial tribunals, that a person in possession of lands belonging to the supreme power, to which he has *no title, is a trespasser;* that the supreme power may so regard him,—may use force to turn him out of possession,—and is not required to resort to law. *Glenn* v. *Thistle,* 1 Cushm. 42. Defendant below was in this position when the State sold to Berry, and Berry to plaintiff below. It was the duty of the State to give its vendee or those claiming under him, possession of the property sold, and this could have been done without legal process, and by the power of the county if necessary; defendant did not therefore come within the saving of the law,—was not in quiet actual or adverse possession, when Hopkins purchased.

These views are respectfully submitted.

*Watson* and *Craft,* for defendant in error.

Hopkins *v.* Sandidge.

The first question which arises for the consideration of this court is, as to the admission of the testimony objected to by plaintiff.

It will be seen that plaintiff is seeking to recover the premises in controversy, upon the strength of a tax title acquired under " an act to secure the collection of taxes on delinquent lands, and for other purposes," approved March 9th, 1850. Acts of 1850, p. 50.

By the 4th section of that act, it is provided, " that said list and verification, when filed in the office of the auditor of public accounts, shall be entered by him on a record kept for that purpose, and shall vest a title to the lands and lots therein returned in the State of Mississippi, which shall be impeachable only on proof," of the payment of the taxes, &c. * * *   " And in all controversies which may arise, touching the delinquency and forfeiture of such lands, the certificate of the auditor under his seal of office, shall be held and taken as evidence of the same, liable to be rebutted only by proof of such payment to the collector. Acts of 1850, p. 52.

By the 2nd section of the act, it is provided, " that hereafter, on the first Monday in April, in every year, it shall be the duty of the tax collector of every county of the State to render to the Board of Police of his county, a list of all lands," &c., upon which the taxes have not been paid.   Acts of 1850, p. 50.

The 10th section requires the assessor to enter the lands forfeited on his assessment-roll, in a separate column kept for that purpose.

The 10th section of the " Declaration of Rights" declares, that no citizen of this State shall " be deprived of his life, liberty, or property, but by due course of law."

And the 14th section, " That all courts shall be open, and every person, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law."

Looking to these provisions, we submit that very grave constitutional questions arise upon the above quoted sections of the Act of 1850, under which plaintiff claims the premises in controversy. It is attempted, in the first place, by forfeiture, to vest in the State a title to land impeachable only by proof of payment of the taxes. Can it be held that under this law, though a man's land may not have been taxable, though no taxes may have been legally assessed,

though no return whatever may have been made as required by the law, yet the owner is cut off from all remedy, and his property vested so absolutely in the State, or her grantee, that no court can be open to his claim for redress? The liberty and life of the citizen are protected by the same safeguards, and no others, as are enacted to shield his property; and the legislature might, with the same propriety, provide for taking away these by a like summary process, and exclude him, as to these, from the "due course of law," which is here denied him for the redress of "injury done him in his lands."

And again, it is sought, by giving an omnipotent efficacy to the auditor's certificate, to destroy all the old and settled rules of evidence, which constitute part of the "due course of law," by which alone, under the constitution, the citizen can be deprived of his life, liberty, or property. As well might it be enacted, that the certificate of a court of inquiry shall be evidence of the commission of a felony, subject to be rebutted only by proof of an *alibi*, or some other one isolated valid defence. The law of evidence, so far at least as the natural relation between the proof itself and the thing to be proved is concerned, is a part of the due course of law which is made inviolable by the constitution; and surely the legislature transcends its powers when it undertakes to break down and destroy it. Upon what rule of reason, or natural relation, or logical connection, can the auditor's certificate be made conclusive evidence of the existence of facts about which the auditor can know nothing. It may well be conceded, that the legislature has power to change the rule of evidence, to the extent of shifting the *onus probandi*, by declaring a tax-collector's deed *prima facie* evidence of certain things, without admitting its power to *conclude* the owner of the land by the deed, or any other specified proof. Blackwell on Tax Titles, 100, 102, 103; and *Rowland* v. *Doty*, 1 Harrington, Ch. R. 3, 11; *Jackson* v. *Morse*, 18 Johnson, 441; *Curry* v. *Hinman*, 11 Illinois, 428, 429; there cited.

In this case we believe that we need not place our rights upon constitutional grounds, but may safely rest upon the settled rule, that "when such arbitrary power has been exercised by the legislature, the courts have given a *strict construction* to the law, and

not extended its unjust operation beyond the very words of the statute." *Moulton* v. *Blaisdell*, 24 Maine, 283. Invoking the application of this rule, we look to the language of the law, as sustaining the judgment of the court in admitting the testimony.

The Act provides, that on the first Monday of April in each year, the collector shall return to the Board of Police a list of delinquent lands, made out and certified in a prescribed manner, and that this list shall be returned to the auditor, and recorded in his office, &c. These formalities, we presume, were intended by the legislature to amount to an inquisition, and satisfy the rule of the common law, "that no freehold might be given to the king, nor derived from him, but by matter of record." 2 Blackstone, 344. If this be not so, and as there is no express provision abrogating this common law rule, we might contend that the law is inoperative, by reason of its failure to meet or repeal this rule. *Fairfax's Devisee* v. *Hunter's Lessee*, 7 Cranch, 603.

Regarding these provisions as intended to operate as an inquest of office, we submit that the legislature only intended that the forfeiture should take place, and the arbitrary rule of evidence obtain, when these provisions were complied with, and that the court will construe the law rigidly and strictly.

Admitting, therefore, that in the language of the 4th section of the Act, "*said* list and verification, when filed," &c., shall vest title in the State, impeachable only by proof of payment of the taxes; and that in all controversies the certificate of the auditor is to be conclusive evidence, so far as provided for by the law: we are at least left at liberty to insist that the legislature, by the use of the words "said list and verification," meant a list and verification in all respects such as the foregoing provisions of the law required; and that it was only to such a list and verification that the magic omnipotence of the act was intended to enure. If this be so, we were clearly entitled to prove that the list and verification under which our land was declared forfeited, were not such as the act required, and were not embraced in the language of the act, "*Said* list," &c. 2 Henning & Munford, R. 318, 344; *Robinson* v. *Huff*, 3 Littell, 38.

The proof is, that on the *second* Monday in April, the collector

made the return to the Board of Police. The act required positively that it should be made on the *first Monday*, (see 2nd section of the Act,) and that the action of the Board of Police thereon should be had on the *second Monday*, thus allowing one week during which persons might examine, in order to ascertain whether their land was embraced in the list, &c. 6 Man. 44; 14 Ib. 289; 1 Blackford, 39; 2 M'Cord, 17.

These authorities, with a long list which might be cited, and the settled rule of this court, fix the strict construction to be given to laws like this, and the rigid enforcement of every statutory precedent to the exercise of statutory arbitrary power.

We submit, therefore, that there is nothing in the language of the law precluding us from showing that "*said list*" &c., had not been returned, and having shown it, the whole fabric of plaintiff's title fell to the ground.

The defendant had the auditor's certificate, it is true, but the statute does not say what this certificate shall embrace. But supposing that in this case it embraces all that the law intended, the statute only makes it evidence in "controversies touching delinquency and forfeiture" "of the same;" that is, of "*the delinquency and forfeiture.*" We are not, under the law, precluded by it from showing that the statutory conditions precedent to the forfeiture, had not been performed. *Torrey* v. *Milbury*, 21 Pickering, 64; *Atkins* v. *Kinman*, 20 Wendell, 249; *Spear* v. *Ditty*, 8 Vermont, 419; *Doughty* v. *Hope*, 3 Denio, 595; *Striker* v. *Kelly*, 2 Ib. 329, 331.

The 10th Section of this Act requires the assessor to place forfeited lands on his amendment roll in a separate column, thus giving to owners of land an opportunity to ascertain from the assessor's roll that their land had been forfeited, and an opportunity to avail themselves of the privilege of redemption afforded by the statute. The proof is that this was not done, and under the foregoing reasoning, we submit that this was a *condition subsequent*, imposed by the law upon the forfeiture, which we had the right to show had not been performed, and the non-performance of which rendered void the forfeiture.

We submit then that there was no error in the action of the court in admitting the testimony which was objected to.

If however, it should be held that this was error, plaintiff has not been injured by it, since the verdict was right, and could not have been otherwise, upon another point.

It is in proof that since the 1st of January, 1851, defendant had been in the peaceable and adverse possession of the premises sued for. During that period, and while the land was so held adversely, the forfeiture took place, and the sale by the State to A. D. Berry, and by Berry to plaintiff. Berry's deed to plaintiff, thus made while the land was adversely held by defendant under colour of title was void, and plaintiff therefore could not recover whatever rights might have been acquired by Berry under his deed from the State. We think that the same principle would apply to the conveyance from the State to Berry, since we know no rule that exempts it from its operation. The Statute of Limitations does not run against the State, but this is by virtue of or in accordance with a common law doctrine which we do not think could have any application here. However this may be though, Berry's deed to plaintiff conferred no title. *Sessions* v. *Reynolds*, 7 S. & M. 130 ; *Ellis* v. *Doe*, 11 Ib. 422.

For this reason then the judgment of the court below must be affirmed.

HANDY, J., delivered the opinion of the court.

This action was brought by the plaintiff in error to recover a tract of land in the possession of the defendant.

On the trial, the plaintiff showed that the land was the property of one Sledge, and was assessed as such for taxes due in 1850, and read in evidence the certificate of the Auditor of Public Accounts, showing that it was returned as forfeited to the State, in April, 1851, and was purchased from the State by one Berry, in November, 1853; also a deed of conveyance made by Berry to the plaintiff.

The defendant then offered a certified copy of the list of lands for unpaid taxes of the year 1850, returned by the tax-collector, to the Board of Police of the proper county, embracing the land in controversy, and proposed to prove that it was returned to the

Board of Police on the day of its date, which was the second Monday of April, 1851.   The plaintiff objected to the admissibility of this evidence; but it was admitted by the court, the plaintiff excepting.

The defendent further proved that he was in possession of the land in January, 1851, and has been so ever since, claiming title to it under purchase from Sledge.

The verdict and judgment were for the defendant, and the plaintiff brings the case here.

The questions presented by the record for consideration are, 1st, whether it is necessary, under the Act of 1850, in relation to the collection of taxes on delinquent lands, that the list of delinquent lands shall be returned to the Board of Police on the first Monday of April, in order to establish a forfeiture of such lands to the State, and 2nd, whether it is competent to avoid the forfeiture by showing that the list was not so returned, in opposition to the certificate of the Auditor authorized by the 4th section of that act.

The first section of the act makes it the duty of the tax-collector on the first Monday of April, to render such list of lands which are delinquent in the payment of taxes to the Board of Police; and that board are required to examine the list "so returned," on the second Monday of April, and to order their clerk to certify a copy of it to the Auditor of Public Accounts; and the 4th section provides " that said list and verification when filed in the office of the Auditor, shall be entered on a record, &c., and shall vest a title to the lands in the State, which shall be impeachable only on proof that the taxes for non-payment whereof the said lands were returned forfeited, had been in fact paid to the collector before the return of said list by him to the Board of Police; and in all controversies which may arise touching the delinquency and forfeiture of such lands, the certificate of the Auditor under his seal of office, shall be held and taken as evidence of the same, liable to be rebutted only by proof of such payment to the collector."

It appears in this case, that the list was not returned on the first Monday of April, but was returned on the second Monday, and the question is, whether such a return was sufficient to cause the forfeiture.

The act of the legislature in question not only prescribed a rule of evidence, but it divests the title of the owner of the land.    In both respects, it is in derogation of the principles of the common law, and operates harshly, and frequently with great injustice upon private rights ; and for that reason, the constitutional force of such statutes has been frequently the subject of serious question. For the same reason, the courts of most of the states of the Union in which the question has arisen, have sanctioned the rule of confining their provisions within the most narrow limits of the language employed. *Moulton* v. *Blaisdell*, 24 Maine R. 283 ; *Garrett* v. *Wiggins*, 1 Scam. 335 ; *Scott* v. *Detroit Y. M. Soc.*, 1 Dougl. (Mich.) 121 ; *Doughty* v. *Hope*, 3 Denio, 595 ; *Hinman* v. *Pope*, 1 Gilm. 131.    And this rule appears to be well sustained by the general principle, that statutes derogatory of private property, and conferring new and extraordinary powers, should receive a strict inter. pretation.    Dwarris on Stat. 750.    This principle is just and reasonable in its application to statutes, providing remedies of so summary a character, in requiring punctuality and fidelity in those charged with the duties prescribed by them, and at the same time protecting the citizen from their harsh operation, except upon compliance with the terms prescribed, and which must be considered a part of their policy, and the benefit of which he is entitled to.

Under the force of this rule, it is apparent that the requisites of the statute under consideration, were not complied with.    The first act required was, that the collector should return a list of delinquents at a specified time, the first Monday of April.    The list was then to remain with the Board of Police, until the second Monday of April.    During that interval, the tax payer had the right to come forward and discharge the unpaid taxes ; and it is probable that it was for the purpose of allowing an opportunity, to such persons as had for any reason failed to pay their taxes, to come forward and make payment, that the period of one week was allowed, before the final action of the board establishing the forfeiture to the State.    It was a privilege to which the tax payer was entitled, but of which he was debarred, in this instance, by the failure of the collector to make his return at the time prescribed by law.    If the party whose duty it was to pay the taxes had

made application to the clerk of the Board of Police to ascertain whether the land had been returned as delinquent, as he might have done in good faith, he would have had no reason to believe that any steps had been taken or would be taken, to declare it forfeited. And land may be so situated with respect to the claims and interests of different persons connected with it, that the failure to pay the taxes may not be attributable to any bad faith; one party supposing that they have been paid by the other. In order to allow such persons a full opportunity to prevent forfeitures, through mistake or negligence, it may be very justly presumed that the legislature intended that the list should be returned and should remain open to public examination for one week before the forfeitures were finally declared, and without such return as would allow that privilege, that there should be no forfeiture.

We are therefore, of opinion that the return of the list by the time prescribed by the statute, was essential in order to work a legal forfeiture, and consequently that the forfeiture in this case was not valid.

The certificate of the auditor, which is made evidence by the 4th section of the act, manifestly contemplates that the forfeiture has been made and returned according to the requirements prescribed. It was entirely competent to the defendant to show that these essential things had not been done; and when such proof was made, the force and effect intended by the statute to be given to the certificate, were destroyed.

The judgment below is in accordance with this view, and is affirmed.